# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| AMERICAN NURSES ASSOCIATION, *et al.*, | | |
| | *Plaintiffs*, | No. 1:26-cv-12443 |
| v. | | Hon. Patti B. Saris |
| UNITED STATES DEPARTMENT OF EDUCATION*, et al.*, | | |
| | *Defendants*. | |

## DEFENDANTS' SUPPLEMENTAL BRIEF

1

Defendants Department of Education and Linda McMahon (collectively, "the Department") submit this supplemental brief as requested by the Court, *see* ECF No. 50, during the recent hearing on Plaintiffs' motion for preliminary relief.

## I.    Plaintiffs Lack Irreparable Harm For Their Requested Relief.

Plaintiffs have asked this Court for two forms of relief. *See* Proposed Order, ECF No. 14-1. *First*, a stay of the effective date of the definitions of "professional student" and "professional degree" in the rule titled Reimagining and Improving Student Education—Federal Student Loan Program Final Regulations, 91 Fed. Reg. 23768 (May 1, 2026) ("Rule"). And *second*, an injunction prohibiting the Department "from relying on or enforcing" the Rule's definition "to exclude students pursuing" the Master of Science in Nursing (MSN), the Doctor of Nursing Practice (DNP), the Doctor of Nurse Anesthesia Practice (DNAP), and the Doctor of Philosophy in Nursing (Ph.D.) from the higher loan limits for student loans. *See* Proposed Order. Given the D.C. court's recent stay order and the Department's recent updated guidance indicating that it will comply with that order while it is in effect and how it will comply, Plaintiffs lack irreparable harm to justify those requests.

Consider first Plaintiffs' request for a stay under § 705. To obtain that relief, Plaintiffs must demonstrate "irreparable injury." 5 U.S.C. § 705. There is no longer any irreparable injury from the Rule's definition because the D.C. court has already stayed the effective date of that definition. *See Am. Ass'n of Nurse Practitioners v. McMahon*, — F. Supp. 3d —, 2026 WL 1826176, at *24 (D.D.C. June 24, 2026). Plaintiffs ask this Court to issue "essentially the same" order as the D.C. court, ECF No. 51 at 19:15-16 (Tr.), but the Department has already told both courts and the public that it will comply with the D.C. court's stay, *see* ECF Nos. 49-1, 53-1. Plaintiffs thus have already obtained the requested stay via the D.C. court's order.

Courts across the nation have recognized that universal preliminary relief issued by another court against the same defendant for the same challenged action—the exact scenario presented now in this case—nullifies any assertion of irreparable harm and, thus, a motion for preliminary relief should be denied or at least stayed. *See, e.g.*, ECF No. 65 at 2, No. 19-cv-100-LEW, *Me. Family Planning v. U.S. HHS* (D. Me. Apr. 26, 2019) ("Because the Washington Order's nationwide injunction temporarily stops the Rule from going into effect until further order of that Court . . . there is no longer an imminent threat of irreparable harm to Plaintiffs necessitating a preliminary injunction from the Court."); *Hawai'i v. Trump*, 233 F. Supp. 3d 850, 853 (D. Haw. 2017) ("[T]he Western District of Washington's nationwide injunction already provides the State with the comprehensive relief it seeks in this lawsuit. As such, the State will not suffer irreparable damage."); *California v. Trump*, 963 F.3d 926, 949 (9th Cir. 2020) (affirming denial of the States' request for a permanent injunction "because the relief sought was duplicative of the relief the district court had already granted in [another] matter"); ECF No. 143, No. 17-cv-0255-TSC, *Pars Equality Ctr. v. Trump* (D.D.C. March 2, 2018) (staying request for preliminary relief because another nationwide injunction "calls into question whether the harms Plaintiffs allege are actually imminent or certain—a prerequisite for a preliminary injunction").

Indeed, a court in this District earlier this year refused to enter a preliminary injunction against multiple government agencies because those agencies had already been preliminarily enjoined on a national basis by a court in the District of Columbia for the same challenged conduct. *See* ECF No. 72, *Cmty. Econ. Dev. Ctr. of Se. Mass. v. Bessent*, No. 1:25-cv-12822-IT (Jan. 27, 2026). This Court should follow suit and refuse to stay a rule that has already been stayed by another court via an order with which the Department is complying. There is no irreparable harm justifying that preliminary relief at this time.

3

Next consider Plaintiffs' request for an injunction against "relying on or enforcing" the definitions in the final rule to exclude the four nursing degrees. Proposed Order at 1. As an initial matter, the Department's guidance makes clear that the Department is not "relying on or enforcing" the definitions in the Rule, *see* ECF No. 49-1, including the so-called contextual requirements, because the D.C. court stayed that aspect of the Rule, *see McMahon*, 2026 WL 1826176, at *16. The Department thus has already done what Plaintiffs hoped to achieve through a preliminary injunction. That should be the end of the matter.

But if it is not, the Department's updated guidance has at least nullified any irreparable harm that Plaintiffs might suffer from how the Department treats the MSN, DNP, and DNAP degrees. The original guidance specified that, for the pendency of the D.C. court's stay, the Department will treat programs in certain six-digit CIP codes that award MSN, DNAP, and DNP degrees as awarding a professional degree. *See* ECF No. 49-1 at 2. In response to Plaintiffs' assertions that the Department should have included additional specific CIP codes leading to the MSN and DNP, *see* Tr. 8:12-19, the Department's updated guidance makes clear that any program within the same four-digit CIP code—*i.e.*, any program within the nursing CIP code—that awards an MSN or DNP will be treated as awarding a professional degree for the pendency of the D.C. court's stay, *see* ECF No. 53-1 at 1, 3. In other words, the Department is already treating all programs awarding MSNs, DNPs, and DNAPs as professional degrees—and therefore eligible for higher student loan limits—during the pendency of the D.C. court's stay. Plaintiffs therefore have not demonstrated irreparable harm to justify a preliminary injunction from this Court directing the Department not to exclude those degrees from the higher loan limits.

Plaintiffs are likely to argue in response that they could suffer irreparable harm if any appeal from the D.C. court's order either reverses or narrows that order. *See* Tr. 19:12-14

(requesting an order from this Court in part because "[w]e do not know whether DOJ will appeal").

Defendants are still considering whether to appeal the D.C. court's order, so Plaintiffs' request for

a preliminary injunction now would basically assume that (1) Defendants appeal and (2) succeed

in that appeal.  An injury that is expressly contingent on a possible future event is, by definition,

not an imminent, irreparable injury.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22

(2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is

inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only

be awarded upon a clear showing that the plaintiff is entitled to such relief.").  At the very least,

the possibility of appeal justifies staying Plaintiffs' motion for preliminary relief, not granting it

now.  *See Pars Equality Ctr.*, *supra*.

**II.     The Only Possible Remaining Issues are the Treatment of Nursing Ph.D. Degrees and Section (iii)(B) of the Professional Student Definition, and the Court Should Deny Plaintiffs' Motion as to Both.**

As discussed above, the D.C. court's order and the Department's subsequent guidance has

nullified any irreparable harm to justify Plaintiffs' requested preliminary relief.  But if the Court

disagrees, the only possible remaining issues are the treatment of nursing Ph.D. degrees—which

are not considered professional degrees even under the Department's recent guidance

implementing the D.C. court's stay order—and Plaintiffs' request that the Court enjoin section

(iii)(B) of the Rule as a "clarifying addendum" to the D.C. court's order.  Tr. 32:4.

The Department explained in the Rule why the nursing Ph.D. is not a professional degree.

*See* Rule at 23799.  To the extent the Court disagrees with that explanation or finds it is based on

extra-statutory requirements, the proper remedy is to allow the Department to decide in the first

instance whether that degree meets the statutory definition.  *See* ECF No. 48 at 12–13 (Defendants'

surreply making this argument).  Plaintiffs' counsel acknowledged this by telling the Court not to

"undertake" a degree-by-degree analysis.  Tr. 21:11.   And though Plaintiffs' counsel argued

5

incorrectly that the Department did not mention Ph.Ds in the Rule, she acknowledged "that is an issue that *the Department* can address and apply the statutory criteria to." *Id.* at 21:15-16 (emphasis added). But if the Court decides to entertain Plaintiffs' previous request for an order directing the Department to treat nursing Ph.Ds as professional degrees, *see* ECF No. 43 at 23, the Department has already explained why that degree does not meet the statutory definition, *see* ECF No. 42 at 26–27. Plaintiffs notably have offered no contrary explanation tied to the statutory text.

As to section (iii)(B) of the Rule, that section creates no irreparable harm. Section (iii)(B) requires a professional student to "be enrolled in a program leading to a professional degree under paragraph (ii)." Rule at 23883. As Plaintiffs' argument goes, the Department can use that section to "ma[ke] the illustrative list [in the Rule] exclusive" by treating only the degrees in section (ii) as professional. Tr. 5:22-23. But the Department is not treating only those degrees as professional. The Department's guidance includes multiple degrees beyond the ones listed in section (ii) as professional for the pendency of the D.C. court's stay. Plaintiffs therefore cannot demonstrate irreparable harm from section (iii)(B), and any challenge to that section should wait until disposition on the merits.[1]

---

[1]    At the hearing, Plaintiffs mentioned the Department's recent reminder to institutions that the Working Families Tax Cuts Act "permits institutions of higher education to establish lower annual loan limits for specific programs, provided that any such limit is applied consistently to all students enrolled in that program of study." Dear Colleague Letter, GEN-26-02 (Jun. 26, 2026), https://fsapartners.ed.gov/knowledge-center/library/dear-colleague-letters/2026-06-26/implementing-new-institutional-authority-set-program-level-federal-student-loan-limits (last visited July 6, 2026); *see also* Tr. 11:14–21; *id.* at 21:23–24. Plaintiffs challenge neither that statutory provision, *see* 20 U.S.C. § 1087e(a)(7)(B), nor the Department's regulatory implementation of that provision, *see* 34 C.F.R. § 685.203(m)(2). The Department's June 26, 2026, Dear Colleague Letter is thus distinct from the statutory and regulatory provisions at issue in this case, and the Department's reminder to institutions about the institutions' authority is not implicated by Plaintiffs' challenge.

Dated: July 14, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

MICHELLE BENNETT
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Christian Dibblee*
CHRISTIAN DIBBLEE
KATHRYN L. ALKIRE
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 353-5980
Email: Christian.R.Dibblee@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that I served a true copy of the above document upon all counsel of record via this court's electronic filing system.

/s/ Christian Dibblee
CHRISTIAN DIBBLEE